UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YVONNE DAVIS,                                                    :
                       Plaintiff,                                 10 Civ. 05213 (DF)
                                             :
       -against-                                         **MEMORANDUM**
                                           :                  **AND OPINION**
THE DEPARTMENT OF EDUCATION OF                   **AND ORDER TO**
THE CITY OF NEW YORK, et al.                          :                  **SHOW CAUSE**

                        Defendants.                :
-------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

      In this employment discrimination case, which is before me on consent pursuant to

28 U.S.C. § 636(c), plaintiff Yvonne Davis ("Plaintiff"), a New York City public school teacher,

initially alleged in her Complaint that defendants the City of New York (the "City") and the

Department of Education of the City of New York (the "DOE") (collectively, "Defendants")

failed to promote her to several assistant-principal positions because of her race, gender, and/or

age, in violation of federal, state, and local law.  Plaintiff also alleged that Defendants unlawfully

retaliated against her, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended,

29 U.S.C. § 621, et seq. (The "ADEA"), and the First Amendment, for having written a

particular book.

      At this point, though, this case has been substantially narrowed.  At her deposition,

Plaintiff confirmed on the record that she was withdrawing her First Amendment retaliation

claims.  In addition, in response to arguments made by Defendants in a summary judgment

motion that is now pending (Dkt. 11), Plaintiff has explicitly withdrawn all of her

failure-to-promote claims, except for her Title VII and ADEA claims against the DOE, arising

out of its allegedly discriminatory failure to offer Plaintiff two particular assistant-principal positions for which she applied in January 2008.  For the reasons discussed below, all of Plaintiff's voluntarily-withdrawn claims are dismissed without prejudice.  As to the remaining claims, the DOE has demonstrated that it is entitled to summary judgment dismissing Plaintiff's two remaining failure-to-promote claims against it, and those claims are therefore dismissed with prejudice.  Further, although neither the DOE nor Plaintiff specifically addresses any Title VII or ADEA retaliation claims that Plaintiff may still be seeking to assert with respect to the two denied positions, it would appear that any such claims would also be subject to dismissal.  Accordingly, as set forth below, Plaintiff is ordered to show cause why any remaining retaliation claims should not be dismissed with prejudice, as well.

## BACKGROUND

### A.    Factual Background[1]

Plaintiff, born on December 18, 1952, is an African-American female.  (Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated Nov. 4, 2011 ("Def. 56.1 Stmt.") (Dkt. 12), ¶ 1; Plaintiff's Response to Defendant's Rule 56.1 Statement, dated Dec. 23, 2011) ("Pl. 56.1 Stmt."), ¶ 1.)  In addition to holding a Bachelor's Degree in English, which she earned in 1976, Plaintiff holds two Master's Degrees, one in Language and Literacy, which she earned in 1995, and one in Administration and Supervision, which she earned in 2001. (Declaration of Assistant Corporation Counsel Christopher A. Seacord in Support of Defendants'

---

[1] For the most part, the undisputed facts set forth herein are taken from the parties' respective statements pursuant to Local Civil Rule 56.1 (*see* discussion *infra* at II(B)(2)), and any unrefuted evidence submitted by the parties.  To the extent the parties dispute particular facts, the Court has attempted to ascertain whether the evidentiary record actually reveals any conflict.

Motion for Summary Judgment, dated Nov. 4, 2011 ("Seacord Decl.") (Dkt. 16), Ex. C

(Plaintiff's Resume ("Pl. Resume")), at 2.)

Plaintiff began working for the DOE in September 1989 (*see* Def. 56.1 Stmt. ¶ 2; Pl. 56.1

Stmt. ¶ 2), and she has continued to be employed by the DOE to the present date.  She began as

an English teacher at an intermediate school in Manhattan (*see* Pl. Resume, at 2 (noting position

from Sept. 1989-June 2004)), and moved from there to become a high school English teacher in

Manhattan (*id.* (Sept.-Oct. 2004)), and then a "Mentor Teacher" at the DOE (*id* (Oct. 2004-June

2007)) and an "Advisory Mentor Teacher" at an alternative learning center in Manhattan

(*id.* (Sept. 2007-present)).

In her Complaint, Plaintiff alleges that she has, on numerous occasions, applied to be

promoted to the position of assistant principal at several New York City schools, but that she has

been denied those positions.  (Seacord Decl., Ex. A (Plaintiff's Complaint, dated Mar. 1, 2010

("Compl.")), ¶ 7; *see also* Dkt. 1 (Notice of Removal, attaching copy of Complaint).)  In

particular, Plaintiff lists eight schools (which she identifies in her Complaint only by school code

numbers), and asserts that the assistant-principal positions for which she has applied have

included, but not been limited to, positions at the listed schools.  (*Id.*)  In connection with their

summary judgment motion, Defendants have fleshed out this allegation, presenting evidence

that, during the period from October 2005 through March 2008, Plaintiff applied for at least the

following nine positions:

1.      On or about October 19, 2005, Plaintiff applied for the position of Principal[2] at the Day Elementary School, Thurgood Marshall Academy Lower School ("M318") (Def. 56.1 Stmt. ¶ 14; Pl. 56.1 Stmt. ¶ 14);

2.      On or about March 23, 2007, Plaintiff applied for the position of Assistant Principal of Day High School, at Jane Adams Vocational High School ("X650") (Def. 56.1 Stmt. ¶ 16; Pl. 56.1 Stmt. ¶ 16);[3]

3.      On or about April 24, 2007, Plaintiff applied for the position of Assistant Principal of Day High School, at the Bronx High School for Law and Community Service ("X439") (Def. 56.1 Stmt. ¶ 18; Pl. 56.1 Stmt. ¶ 18);

4.      On or about April 24, 2007, Plaintiff applied for the position of Assistant Principal of Day High School, at the School for Arts, Imagination and Inquiry ("M299") (Def. 56.1 Stmt. ¶ 20; Pl. 56.1 Stmt. ¶ 20);

5.      On or about April 24, 2007, Plaintiff applied for the position of Assistant Principal of Elementary Intermediate and Junior High Schools, at Intermediate School 339, the School of Community Technology ("I.S. 339") (Def. 56.1 Stmt. ¶ 22; Pl. 56.1 Stmt. ¶ 22);

6.      On or about June 5, 2007, Plaintiff applied for the position of Assistant Principal of Elementary Intermediate and Junior High Schools, at Harbor Heights ("M349") (Def. 56.1 Stmt. ¶ 24; Pl. 56.1 Stmt. ¶ 24);

7.      On or about June 6, 2007, plaintiff applied for the position of Assistant Principal of Supervision English, at Murry Bergtraum High School for Business Careers ("M520") (Def. 56.1 Stmt. ¶ 26; Pl. 56.1 Stmt. ¶ 26);

8.      On or about January 2, 2008, Plaintiff applied for the position of Assistant Principal of Elementary Intermediate and Junior High Schools, at P.S./I.S. 210,

---

[2] Although Plaintiff's Complaint only alleges that Plaintiff was denied assistant-principal positions, it appears that one of the positions she references was actually a principal position. (*Compare* Compl. ¶ 7 *with* Def. 56.1 Stmt. ¶ 14; Pl. 56.1 Stmt. ¶ 14.)

[3] In her Complaint, Plaintiff identifies one of the schools in question by the school code "X630." (*See* Complaint ¶ 7.)  This was apparently a typographical error, and should be deemed corrected to the school code "X650," as Plaintiff later clarified at her deposition.  (*See* Seacord Decl., Ex. B (Transcript of Plaintiff's deposition, conducted Oct. 14, 2011 ("Pl. Dep.")), at 66:12-13 ("you're right on the typo X 650 not 30"); *see also* Pl. 56.1 Stmt. (admitting that Plaintiff applied for the position of Assistant Principal at Jane Addams Vocational High School (X650)).)

the Twenty-First Century Academy for Community Leadership ("P.S. 210") (Def. 56.1 Stmt. ¶ 28; Pl. 56.1 Stmt. ¶ 28); and

9.      On or about January 22, 2008, Plaintiff applied for the position of Assistant Principal of Elementary Intermediate and Junior High Schools, at P.S. 004, Duke Ellington School ("P.S. 4") (Def. 56.1 Stmt. ¶ 36; Pl. 56.1 Stmt. ¶ 36).

It is not disputed that Plaintiff was not offered any of these nine positions, nor was she even invited to interview for any of them. (Def. 56.1 Stmt. ¶¶ 14-29, 36-37; Pl. 56.1 Stmt. ¶¶ 14-29, 36-37.)

The parties also do not dispute the process that is generally used by the DOE to fill a vacant assistant-principal position at one of the City's public schools. In order for any school within the DOE to fill such a position, the school is required to comply with Chancellor's Regulation C-30, which governs the entire hiring process. (*See* Def. 56.1 Stmt. ¶ 4; Pl. 56.1 Stmt ¶ 4.) The school must post the position on the DOE's website for a minimum of 15 days, and in the posting, state the minimum qualifications for that position. (Def. 56.1 Stmt. ¶ 7; Pl. 56.1 Stmt ¶ 7.) All applications for the position of assistant principal must be submitted through the DOE website. (Def. 56.1 Stmt. ¶ 8; Pl. 56.1 Stmt ¶ 8.) Only candidates who obtain a Certificate of Eligibility for Supervisory Placement from the DOE's Division of Human Resources are eligible to be appointed to the position of assistant principal. (Def. 56.1 Stmt. ¶ 5; Pl. 56.1 Stmt ¶ 5.)

The Principal of the hiring school serves as the hiring manager and is ultimately responsible for selecting a candidate to fill the position of assistant principal. (Def. 56.1 Stmt. ¶ 6; Pl. 56.1 Stmt. ¶ 6.) Once the Principal receives a list of eligible applicants for the position, the Principal must, *inter alia*, form a so-called "Level I Committee." (Def. 56.1 Stmt. ¶ 9; Pl. 56.1 Stmt ¶ 9.) This committee, which must have at least 11 members – one supervisor

5

from the school or another school within the same school district, two members of the United Federation of Teachers, one school support staff member represented by Local 372, four to seven parents, one designee of a school support organization, one designee of an intermediary organization, and the Principal – interviews and rates three to five eligible applicants, and then communicates the committee's recommendation, if any, and ratings to the Principal.  (Def. 56.1 Stmt. ¶¶ 10-12; Pl. 56.1 Stmt ¶¶ 10-12.)  At Level II of the process, after considering the Level I Committee's findings, and, in some case, conducting second interviews of the candidates, the Principal makes a final decision as to whom to hire to fill the position of assistant principal. (Def. 56.1 Stmt. ¶ 13; Pl. 56.1 Stmt ¶ 13.)

In this case, Plaintiff alleges that her failure to be considered or appointed to the various positions for which she applied was the result of unlawful discrimination and/or retaliation.

## B.   Procedural History

On September 5, 2008, Plaintiff filed a charge with the federal Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on her gender and age (*see* Def. 56.1 Stmt. ¶ 46; Pl. 56.1 Stmt. ¶ 46; *see also* Seacord Decl. Ex. L (Plaintiff's EEOC charge ("EEOC Charge")), at 1[4]), as well as retaliation for having written a book (EEOC Charge, at 3). More specifically, Plaintiff claimed that Defendants rejected her application for the assistant-principal positions at seven schools (M004, M210, M299, M318, X349, X439, X650), on the basis of her gender (EEOC Charge, at 3), and that, on two occasions, Defendants rejected her application for the assistant-principal position at M520, the first time on the basis of her age

---

[4] The pages of Plaintiff's EEOC charge are not numbered.  For ease of reference, the Court has assigned numbers to those pages, starting with "1."

(*id.* at 2), and the second time on the basis of her gender (*id.* at 3).[5]  Plaintiff also claimed that Defendants retaliated against her for writing a book entitled "Teachers Under Siege," by "plac[ing] [Plaintiff] on a list and flagg[ing] [her] as a warning to others not to hire [her]."  (*Id.* at 3 (internal quotation marks omitted).)  In her EEOC charge, however, Plaintiff made no mention of any discrimination on the basis of her race.

Approximately three months later, on December 1, 2008, Plaintiff filed another administrative complaint, this time with the New York State Division of Human Rights ("SDHR"). (*See* Def. 56.1 Stmt. ¶ 45; Pl. 56.1 Stmt. ¶ 45; Seacord Decl. Ex. M, at 1.)  This time, Plaintiff alleged that she had suffered employment discrimination on the basis of her race, color, sex, age, and conviction record.  (*See* Seacord Decl. Ex. M, at 1.)

On November 25, 2009, the EEOC issued Plaintiff a "right-to-sue" letter (*see* Def. 56.1 Stmt. ¶ 47; Pl. 56.1 Stmt. ¶ 47), and closed its file on Plaintiff's charge, stating that, "[b]ased upon its investigation," it was "unable to conclude that the information obtained establishe[d] violations of the statutes" (Seacord Decl. Ex. N ("Right-to-Sue Letter"), at 3[6]).  On April 26, 2010, the SDHR similarly informed Plaintiff that it had found "[n]o [p]robable [c]ause to believe that the respondent ha[d] engaged in or is engaging in the unlawful discriminatory practice complained of," and had, consequently, dismissed Plaintiff's complaint and closed the file. (Seacord Decl. Ex. M, at 1; *see* also Def. 56.1 Stmt. ¶ 49; Pl. 56.1 Stmt. ¶ 49.)

---

[5] The list of schools that Plaintiff referenced in her EEOC charge does not precisely align with the list of schools at issue here (*compare* EEOC charge, at 3, *with* Def. 56.1 Stmt. ¶¶ 14-28, 36; Pl. 56.1 Stmt ¶¶ 14-28, 36), but any differences are irrelevant for purposes of this motion, as the two job applications that now remain at issue here were raised in the EEOC charge.

[6] The pages Plaintiff's Right-to-Sue Letter are not numbered.  For ease of reference, the Court has assigned numbers to those pages, starting with "1."

On March 1, 2010 – after receiving the EEOC's "right-to-sue" letter, but before the conclusion of proceedings before the SDHR – Plaintiff commenced this action in the New York State Supreme Court, New York County, seeking injunctive, declaratory, and monetary relief. (*See* Compl.)   On July 8, 2010, Defendants removed the action to this Court (*see* Dkt. 1), and all parties then consented to proceed before a magistrate judge (*see* Dkt. 7).  Issue was joined in August 2010 (*see* Answer to Complaint, dated Aug. 8, 2010 (Dkt. 3)), and the parties proceeded with, and have now completed, discovery.

On November 11, 2011, Defendants moved for summary judgment, seeking the dismissal of all of Plaintiff's claims.  (*See* Defendants' Notice of Motion for Summary Judgment, dated Nov. 11, 2011 (Dkt. 11).)  In their motion, Defendants assert a number of arguments, including that Plaintiff's race-based claims were not administratively exhausted prior to the commencement of this action; that all of Plaintiff's discrimination claims, except those relating to the last two positions for which she applied, are time-barred; that Plaintiff's state and local-law claims are procedurally barred; that the City is not a proper defendant; and that Plaintiff cannot demonstrate a triable issue of fact to avoid judgment on any remaining claims against the DOE.  (*See generally* Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Nov. 4, 2011 ("Def. Mem.") (Dkt. 17).)  Plaintiff has apparently accepted certain of these arguments, as her opposition brief contains the following statement:

> In light of [D]efendants' moving papers, Plaintiff is withdrawing her claims against the City of New York and the New York State Human Rights Law claim and New York City Human Rights Law claim and is limiting her response to the [last] two positions [for which she applied,] to wit: P.S. 210 and P.S. 4.

(Plaintiff's Memorandum of Law in Opposition to Defendant[s'] Motion for Summary Judgment, dated Dec. 23, 2011 ("Pl. Opp. Mem.") (Dkt. 21), at 1 n.1.)  Plaintiff argues, however,

that the Court should deny summary judgment to the DOE on her race, gender, and age-discrimination claims regarding her unsuccessful applications for assistant-principal positions at P.S. 210 and P.S. 4.  (*See generally id.*)   In reply, Defendants note Plaintiff's withdrawal of most of her claims, and maintain that her remaining claims cannot survive summary judgment on the record presented.  (*See generally* Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated Jan. 23, 2012 ("Def. Reply") (Dkt. 24).)

## DISCUSSION

## I.   PLAINTIFF'S WITHDRAWAL OF MOST OF HER CLAIMS

Where a plaintiff voluntarily withdraws a claim in the course of litigation, it is generally appropriate for the Court to dismiss that claim without prejudice.  *See, e.g.*, *Ally v. F.E.D. Concrete Co.*, No. 88 CIV. 8552 (SWK), 1990 U.S. Dist. LEXIS 33, at *7 (S.D.N.Y. Jan. 4, 1990) (dismissing one of plaintiffs' claims without prejudice pursuant to Fed. R. Civ. P. 41(a)(2), where plaintiffs voluntarily withdrew that claim but wished to continue to litigate their remaining claims).  Even where withdrawn claims appear to be meritless, dismissal without prejudice is usually the preferred course, as "the presumption in this circuit is that a court should grant [such] a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result."  *The Gap, Inc. v. Stone International Trading, Inc.*, 169 F.R.D. 584, 588 (S.D.N.Y. 1997).  Factors relevant to the ultimate determination of whether a voluntary dismissal should be with or without prejudice include:  "plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss."  *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

In this case, Plaintiff, who is represented by counsel, has twice made explicit statements that she seeks to withdraw certain claims.  First, Plaintiff testified at her deposition that she wished to withdraw her First Amendment retaliation claims, as pleaded in her Complaint under 42 U.S.C. § 1983.  (*See* Compl., ¶ 12.)  Although the deposition question posed by counsel was not well-phrased, the import of both the question and Plaintiff's response is nonetheless clear:

> Q.    . . . .  Just for the record, so we don't have to talk about, you're not retaliating for exercising the [F]irst [A]mendmen[] rights for writing that book?
>
> A.    We discussed that with my attorney we're withdrawing that.

(Pl. Dep.**,** at 69:2-7.)  Given this testimony, as well as the fact that Plaintiff has not disputed Defendants' statement in their moving brief that Plaintiff had withdrawn her First Amendment retaliation claims (*see* Def. Mem., at 1 n.1), the Court accepts that any such claims have been voluntarily withdrawn.  Further, as it does not appear that Defendants spent any significant time litigating these claims, or that Defendants would be substantially prejudiced by the dismissal of these claims without prejudice, the Court will dismiss the claims on that basis.

Second, as noted above, Plaintiff dropped a number of her discrimination claims in response to Defendants' summary judgment motion, implicitly conceding that those claims could not survive Defendants' motion.  Although, based on the arguments made by Defendants in their motion, these withdrawn claims may, in fact, be untimely or otherwise defective, the five-factor analysis set out in *Zagano* counsels in favor of dismissing these claims without prejudice, as well.

First, as soon as Defendants, by way of their motion, explained their position that these claims were not viable (*see* Def. Mem., at 2-3), Plaintiff, by way of her opposition brief, informed the Court that the claims should be considered withdrawn (*see* Pl. Mem., at 1 n.1).  Second, even

if, as Defendants contend, the claims are meritless, the Court has no basis to conclude that Plaintiff exhibited undue vexatiousness by asserting them.  As noted above, dismissal with prejudice is not generally warranted merely because a claim appears to lack merit; rather, courts in this circuit have repeatedly dismissed seemingly meritless claims without prejudice, where the defendant's arguments could be adequately addressed upon any re-filing of the action.  *See, e.g.*, *Harlem Team for Self-Help, Inc. v. Abyssinian Baptist Church*, 189 F.R.D. 284, 286 (S.D.N.Y. 1999) ("To the extent that [p]laintiff's case proves to be as frivolous as [d]efendants claim, [d]efendants will be able readily to re-group and re-assert their argument, if, as and when the action were to be brought again in the future." (internal quotation marks and citation omitted)). Third, although this case has progressed to the point where discovery is complete, Defendants do not suggest that they have expended a large amount of time, effort, or expense in needless discovery, and the Court has not yet set a trial date or a deadline for pretrial submissions.  Fourth, given the relatively modest scope of the discovery record, it does not appear that Defendants would experience substantial duplication of expense if the case were to be re-filed in the future. Finally, although Plaintiff offers no clear explanation for her withdrawal of these claims, the Court accepts that her decision to withdraw them was a reasonable response to well-supported positions asserted in Defendants' moving papers.

As each of the relevant factors favors the dismissal, without prejudice, of Plaintiff's voluntarily-withdrawn discrimination claims, the Court concludes that this would be the appropriate result.  Accordingly, in addition to Plaintiff's First Amendment claims, the following claims are all hereby dismissed without prejudice:  (1) all of Plaintiff's claims against the City as defendant; (2) all of Plaintiff's state and local-law claims; and (3) all of Plaintiff's Title VII and

ADEA claims, other than those relating to the last two positions for which she applied (*i.e.*, positions at P.S. 210 and P.S. 4).

In the end, the only claims that Plaintiff has not voluntarily withdrawn appear to be (1) her Title VII and ADEA discrimination claims, arising from the DOE's alleged failure to promote her to the position of assistant principal at either P.S. 210 or P.S. 4, and (2) her Title VII and AEDA retaliation claims, arising from the same events. These remaining claims are addressed below.

## II.   PLAINTIFF'S TWO REMAINING DISCRIMINATION CLAIMS AGAINST THE DOE

The DOE (the only remaining defendant) argues that any race-based claims that Plaintiff may be seeking to assert regarding the denial of her applications for positions at P.S. 210 and P.S. 4 should be dismissed as unexhausted. This argument is premised on the fact that Plaintiff did not raise any race-discrimination claims in her EEOC charge (*see* Def. Mem., at 3; *see also generally* EEOC Charge), although Plaintiff argues that this omission should not be considered fatal, especially in light of the fact that she subsequently raised such claims in her SDHR charge, which, she argues, should have given the EEOC notice of the claims (*see* Pl. Opp. Mem., at 5). While it seems doubtful that, on the record presented, Plaintiff could be found to have satisfied the exhaustion requirement,[7] the Court need not reach this issue, as, in any event, Plaintiff has not

---

[7] As a general matter, "[t]he courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge," *Peterson v. Insurance Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995), unless the claim is "reasonably related" to the claims raised before the EEOC, *see Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). Based on the criteria set forth in *Butts*, it would not appear that Plaintiff's race-based claims are sufficiently related to the allegations raised in her EEOC charge to enable her to proceed on those claims in this Court. *See Butts*, 990 F.2d at 1402-03. It is also unlikely that Plaintiff's later filing with the SDHR could independently satisfy the exhaustion requirement, given that Plaintiff did not wait for the

shown the existence of a material issue of triable fact with respect to any of her purportedly

remaining discrimination claims, including her race-discrimination claims.

### A.      Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary

judgment may be granted when the parties' sworn submissions show that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v.*

*KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The moving party bears the burden of

showing that no genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970).  Accordingly, the Court must "view the evidence in the light most favorable to

the party against whom summary judgment is sought and must draw all reasonable inferences in

his favor."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Nonetheless, the party opposing summary judgment "may not rely merely on allegations

or denials in its own pleading," but " must . . . set out specific facts showing a genuine issue for

trial."  Fed. R. Civ. P. 56(e)(2).  This means that "[t]he non-moving party may not rely on

conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d

Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), but, rather,

must present "significant probative evidence tending to support the complaint."  *Smith v. Menifee*,

---

conclusion of the state investigation to commence suit. *See Wiercinski v. Mangia 57*, Inc.,No. 09
Civ. 4413 (ILG) (JO), 2012 U.S. Dist. LEXIS 85043, at *13-14 (E.D.N.Y. June 18, 2012) ("As a
precondition to filing a Title VII claim in federal court, a plaintiff must first exhaust his
administrative remedies . . . ." (citations omitted)).

No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, at *9 (S.D.N.Y. Mar. 25, 2002) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

In sum, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried" on the evidence presented. *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995).  Where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate. *See Liberty Lobby*, 477 U.S. at 248.

Under this Court's local rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).[8] "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz,* 258 F.3d at 74.  Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law. *Id.*  Thus, the Court may not rely solely on the statement of undisputed facts contained in

---

[8] If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

the moving party's Rule 56.1 statement; it also must be satisfied that the moving party's assertions are supported by the record. *See Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Holtz*, 258 F.3d at 74; *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 329 n.12 (S.D.N.Y. 2005). Summary judgment may only be granted where the Court is satisfied that the undisputed facts, as supported by the record, "'show that the [movant] is entitled to a judgment as a matter of law.'" *Champion*, 76 F.3d at 486 (quoting Fed. R. Civ. P. 56(c)).

### B.   Framework for Title VII and ADEA Discrimination Claims

Title VII provides that it shall be unlawful for an employer to "discriminate against an individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1). Employment discrimination claims brought under Title VII are analyzed under the familiar burden-shifting framework set out in *McDonnell Douglas*, 411 U.S. 792, and the same framework applies to ADEA discrimination claims, *see, e.g.*, *Kantrowitz v. Uniondale Union Free Sch. Dist.*, 822 F. Supp. 2d 196, 208 (E.D.N.Y. 2011). To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she was a member of the protected class; (2) she satisfactorily performed her duties; (3) the employer took an adverse employment action against her; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. 792 at 802; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

If the plaintiff makes this "*de minimus*" showing, *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001), a presumption of discrimination is created and the burden

then shifts to the employer merely to articulate some legitimate, non-discriminatory reason for the adverse action taken against the plaintiff, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142-43 (2000); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  The employer need not persuade the Court that the proffered reason was the actual reason for the adverse action; rather, the employer's burden is simply to rebut the plaintiff's *prima facie* case by clearly setting forth, "through the introduction of admissible evidence, the reasons for the [adverse action against the plaintiff]."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

If the employer articulates such a reason, the presumption of discrimination disappears, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993), and the burden then shifts to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for discrimination, *see Reeves*, 530 U.S. at 143.  Thus, once the defendant has presented a non-discriminatory reason for its employment action, it is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000); *see St. Mary's Honor Ctr.*, 509 U.S. at 510-11; *Burdine*, 450 U.S. at 255-56.  The ultimate burden of proving that the defendant was intentionally discriminatory in its employment practices remains at all times with the plaintiff.  *Burdine*, 450 U.S. at 253.

A reason given by an employer for its action cannot be proven to be pretextual unless the plaintiff shows that the reason was false *and* that discrimination was "the real reason."  *St. Mary's Honor Ctr.*, 509 U.S. at 515.  At the summary judgment phase, the plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for the adverse action is false *and* as to whether it is more likely

that a discriminatory reason motivated the employer to make the adverse decision." *Gallo v. Prudential Residential Servs., Ltd*., 22 F.3d 1219, 1225 (2d Cir. 1994) (emphasis in original).

An extra measure of caution is needed in awarding summary judgment to a defendant where, as in a discrimination case, intent is at issue. *Id.*, at 1224. An employer's records will rarely document the state of mind or motives of its decision-makers, and therefore materials "must be carefully scrutinized" for circumstantial evidence about the employer's state of mind and those factors that motivated the challenged action. *Chertkova v. Connecticut Gen. Life Ins. Co*., 92 F.3d 81, 87 (2d Cir. 1996). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation.").

C.   **Plaintiff's Discrimination Claims Based on the Denial
of Assistant Principal Positions at P.S. 210 and P.S. 4**

In January 2008, when Plaintiff was 56 years old, she applied for assistant-principal positions at both P.S. 210 and P.S. 4, but she was not selected to interview for either position. (Def. 56.1 Stmt. ¶¶ 28, 36; Pl. 56.1 Stmt. ¶¶ 28, 36.) In both cases, the positions were ultimately filled by Hispanic males – at P.S. 201, the position was given to Camilo Mejia ("Mejia"), who, in 2008, was 40 years old (Def. 56.1 Stmt. ¶¶ 32,33; Pl. 56.1 Stmt. ¶¶ 32, 33); at P.S. 4, the position was given to Gilberto Batiz ("Batiz"), who, at the time, was approximately 48 years old (Def.

56.1 Stmt. ¶¶ 40, 41; Pl. 56.1 Stmt. ¶¶ 40, 41).  In each instance, the hiring decision was made by

the school principal, each of whom was female and Plaintiff's age or older.  (Def. 56.1 Stmt. ¶ 30

(stating that the Principal of P.S. 210 was Evelyn Linares ("Linares"), who was approximately 56

years old at the time she made the hiring decision); Pl. 56.1 Stmt. ¶ 30; Def. 56.1 Stmt. ¶ 38;

Seacord Decl., Ex. Q (stating that the Principal of P.S. 4 was Delois White ("White"), who was

approximately 62 years old at the time of the decision); Pl. 56.1 Stmt. ¶ 38).

With respect to the P.S. 210 hiring decision, the DOE concedes, for purposes of its

motion, that Plaintiff has made out a *prima facie* case of discrimination on the basis of race,

gender, and/or age.  (*See* Def. Mem., at 8.)  The DOE makes a similar concession with respect to

Plaintiff's race and gender-discrimination claims regarding P.S. 4, although there, with respect to

Plaintiff's age-discrimination claim, the DOE argues that, because the individual who was hired

was only eight years younger than Plaintiff, Plaintiff cannot actually show that the hiring took

place under circumstances giving rise to an inference of age discrimination.[9]  (*See id.*, at 10-11;

*see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("In the

age-discrimination context . . . an inference cannot be drawn from the replacement of one worker

with another worker insignificantly younger . . . .  [T]he fact that a replacement is substantially

younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that

the plaintiff was replaced by someone outside the protected class.").)  Regardless of this, the DOE

argues that, in both cases, it has come forward with evidence of legitimate, non-discriminatory

---

[9] Plaintiff's assertion, in her papers, that Batiz was "45 years of age," and that Plaintiff was "59" (Pl. Mem., at 6) appears to be in error, as Batiz was reportedly born in 1960 (see Seacord Decl. Ex. J) and Plaintiff was born in 1952 (Def. 56.1 Stmt. ¶ 1; Pl. 56.1 Stmt. ¶ 1). Thus, at the time Plaintiff applied for the position at P.S. 4, Batiz would have been 48 and Plaintiff would have been 56 – a difference of only eight years.

18

reasons for the hiring decisions in question, *see McDonnell Douglas*, 411 U.S. at 802, and that

Plaintiff cannot demonstrate, on the evidentiary record, that the proffered reasons were a pretext

for unlawful discrimination (*see id.*, at 8, 10-11).  This argument is persuasive.

The DOE has first come forward with evidence that both of the schools in question had a

high proportion of students who were Spanish-speaking and "English Language Learners"

("ELL"), and that both principals had therefore wished to hire assistant principals who were

bilingual.  In this regard, the DOE highlights that P.S. 210 is a dual-language school, where

classes are taught in both English and Spanish.  (*See* Declaration of Evelyn Linares, dated Nov. 4,

2011 ("Linares Decl.") (Dkt.  16), ¶ 5; Declaration of Delois White, dated Nov. 4, 2011 ("White

Decl.") (Dkt. 14), ¶ 6.)[10]  The DOE also puts forward a statement, made under penalty of perjury

by Linares, the Principal of P.S. 210, attesting that she had not only wanted a "bilingual educator"

to fill the assistant-principal position, but that she had actually invited *only* candidates whose

resumes indicated that they were proficient in both English and Spanish to interview for that

position.  (Linares Decl., ¶ 5; *see also* Def. 56.1 Stmt. ¶ 31.)  White, the Principal of P.S. 4,

provides a similar statement, attesting that she had actually sought a candidate with dual-language

fluency.  (White Decl., ¶ 6.)  Ultimately, the two candidates who were hired were both able to

communicate in Spanish, as well as English.  Mejia's resume explicitly indicated his dual-

language proficiency (*see* Seacord Decl., Ex. I ("Mejia Resume")), and Batiz's resume indicated

dual-language fluency and also showed that he had significant bilingual teaching experience (*see*

Seacord Decl., Ex. K ("Batiz Resume")).  Plaintiff's resume, on the other hand, did not indicate

Spanish language capability (*see generally* Pl. Resume), and the record shows that, at the time she

---

[10] Although Plaintiff asserts that only a small number of ELL students attend P.S. 210
(*see* Pl. Decl., ¶¶ 19, 20), she offers no evidence to support her conclusory assertion.

applied for these positions, Plaintiff was neither proficient nor conversational in Spanish (*see* Pl. Decl., at ¶¶ 1, 21 (describing herself as monolingual)).

Second, the DOE has offered evidence that both of the candidates who were hired for the positions in question were well known to the principals of the respective schools, in that these candidates had already been teaching – and serving in administrative capacities – in those schools. In particular, the record shows that Mejia had worked for several years as the Teacher in Charge of P.S. 210's Middle School Annex, and had then served for nine months as the school's Interim Acting Assistant Principal. (*See* Linares Decl., ¶ 8; *see also* Mejia Resume.) Consequently, Linares states that she had reason to be familiar with Mejia's teaching and administrative abilities, and that she felt she "could rely on [Mejia] to effectively and efficiency perform the duties of [a]ssistant principal." (Linares Decl., ¶ 8.) Similarly, the record reflects that, by the time White made the decision to hire Batiz at P.S. 4, Batiz had already served as a teacher and as Interim Acting Assistant Principal at that school. (*See* Def. 56.1 Stmt. ¶ 43; Pl. 56.1 Stmt. ¶ 43.) The record suggests that, in those capacities, Batiz had become familiar with the administration and students of P.S. 4, and that White was able to learn, firsthand, of Batiz's teaching, administrative, and linguistic abilities. (*See* Def. 56.1 Stmt. ¶ 43; Pl. 56.1 Stmt. ¶ 43.)

Having come forward with the evidence described above, the DOE has met its burden of showing a "legitimate, nondiscriminatory rationale" – indeed, more than one such rationale – for the school principals' rejection of Plaintiff's applications for the assistant-principal positions at both P.S. 210 and P.S. 4. To survive summary judgment, Plaintiff must then be able to provide evidence capable of showing that the given reasons were pretextual. *See Reeves*, 530 U.S. at 143; *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). Plaintiff must "'produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate,

non-discriminatory reasons proffered by [the DOE] were false, and that more likely than not [discrimination] was the real reason for the [employment actions].'"  *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (citations omitted)).

Plaintiff, however, has produced no such evidence.  Her opposition brief is devoid of any reference to gender-based discrimination, and, although she does argue, with respect to each of the two positions at issue, that "the reason proffered for not hiring Plaintiff is false and is being used to mask the real reason for not promoting to wit age and race" (Pl. Opp. Mem., at 7; *see also id.*, at 9), she offers little to substantiate this conclusory assertion.

First, Plaintiff declares that the school principals' stated preference for bilingual assistant principals was pretextual because "[i]t was not important"  for the schools in question to have bilingual assistant principals.  (Pl. Opp. Mem., at 8; Plaintiff's Declaration, dated Dec. 22, 2011 ("Pl. Decl.") (Dkt. 22), ¶ 22.)  On this point, Plaintiff explains her view that assistant principals "do [not] teach students," and, therefore, they do not need to communicate directly with students who have limited English proficiency (Pl. Decl. ¶ 21) or to understand lessons and classes taught to such students by Spanish-speaking teachers (*id.*).  Plaintiff's statements, however, simply reflect her own conception of the role of an assistant principal, a position she has never held.  Moreover, her subjective beliefs as to the appropriate qualifications of assistant principals in schools with large numbers of Spanish-speaking students are irrelevant because "employers, not the court, determine what qualifications are necessary."  *Abraham v. New York City Dep't of Educ.*, 398 Fed. Appx. 633, 635 (2d Cir. 2010); *see also Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses

employers' business judgments."). In other words, Plaintiff's own, subjective assertions as to why, in her view, bilingual educators were not needed for the positions at issue do not demonstrate pretext.

Second, Plaintiff argues that the principals' stated preference for bilingual candidates is belied by the fact that the job postings for the position of assistant principal at both P.S. 210 and P.S. 4 did not specify that only bilingual candidates should apply. (Pl. Opp. Mem., at 7, 8; *see also* Pl. Decl., ¶ 16.) Yet Plaintiff, herself, acknowledged at her deposition that job postings for assistant-principal positions were always very "brief" and had no mention of required language skills. (*See* Pl. Dep., at 52:2-7 ("It's usually as indicated here the assistant principal for the level of high school. They don't say assistant principal bilingual of elementary. They don't say Italian or any of that. It's just elementary, intermediate or high school.") As there is no evidence in the record that, in the usual cursory job listings, it was customary or expected for the DOE to include a principal's preference for dual-language proficiency, the omission of such information from the listings cannot demonstrate pretext.

Third, Plaintiff contends that her qualifications were so superior to those of the successful candidates, Mejia and Batiz, that the DOE's decision to hire these candidates instead of Plaintiff must have been discriminatory. (*See* Pl. Opp. Mem., at 6-7.) To survive summary judgment on the strength of her credentials, Plaintiff would have to come forward with evidence capable of showing that her credentials were "so superior to the credentials of the person[s] selected for the job[s] that no reasonable person, in the exercise of impartial judgment, could have chosen [the selected candidates] over . . . [P]laintiff." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Notwithstanding Plaintiff's seemingly strong academic and teaching credentials, no reasonable fact-finder could conclude that her qualifications were sufficiently

superior to those of the selected candidates to meet this standard, especially given that Plaintiff apparently lacked the credential of Spanish-language proficiency.  In addition, the DOE has shown that the hired candidates had both teaching and administrative experience, including, on an interim basis, in the very jobs, in the very schools, in question.  Plaintiff, for her part, had never before served in an assistant-principal capacity.

Finally, acknowledging that the selected candidates were well known to the school principals who hired them, Plaintiff suggests in her papers that the hiring of those candidates was a foregone conclusion.  (*See* Pl. Opp. Mem., at 6-7 (asserting, for example, that the principal at P.S. 210 "knew she . . . was going to hire  . . Mejia before the position [was] posted online").)  Indeed, Plaintiff asserts that school principals always know whom they plan to hire before they post vacancies for assistant-principal positions.  (*See id.*)  While this may raise questions about the fairness or true openness of the overall hiring process, it undermines Plaintiff's claim that she was not hired because of her race, gender, or age.  If, as Plaintiff suggests, the individuals who made the hiring decisions chose which candidates to hire even before the listings were posted, then the decision to disregard any other candidates necessarily would have been made regardless of those candidates' membership in any protected class.

In sum, the DOE has presented evidence showing that ELL students attended both P.S. 210 and P.S. 4, and that the successful applicants, Mejia and Batiz, were both able to speak Spanish and had significant experience working at those schools, both as teachers and as interim assistant principals.  The DOE has also presented evidence showing that Plaintiff did not speak Spanish, had no experience as an assistant principal, and had never worked at the schools in question.  Plaintiff, for her part, has failed to put forth evidence showing that the principals' stated non-discriminatory reasons were merely a pretext for unlawful discrimination.

23

Accordingly, based on the record as a whole, the DOE is entitled to summary judgment dismissing, with prejudice, Plaintiffs Title VII and ADEA discrimination claims that arise from the denial of her applications for the assistant-principal positions at both P.S. 210 and P.S. 4.

## III.   REMAINING TITLE VII AND ADEA RETALIATION CLAIMS

Although neither the DOE nor Plaintiff has addressed Plaintiff's statutory retaliation claims in their motion, it appears that any such claims (to the extent Plaintiff is continuing to assert them) cannot stand.  "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 156-157 (2d Cir. 2012) (citations omitted).  Here, the only protected activity alleged is Plaintiff's writing of a book entitled "Teachers Under Siege," but the discovery record before the Court appears to contain absolutely no evidence (a) that Plaintiff even wrote this book, (b) that she wrote it prior to being denied the two positions at issue, (c) that the book raised a complaint about race, gender, and/or age discrimination, (d) that the principals of the two schools in question or other decision-makers at the DOE knew that Plaintiff had written the book, prior to deciding not to hire Plaintiff for the assistant-principal positions at issue, and (e) that there was a causal connection – manifest through temporal proximity or in some other way – between Plaintiff's writing of the book and her rejection for the applied-for positions.

Given the seeming lack of evidence in the record to support Plaintiff's statutory retaliation claims, Plaintiff is directed to show cause within thirty (30) days of the date of this Order why any such claims that she is still seeking to pursue should not also be dismissed, with prejudice.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.      The following claims, having been voluntarily withdrawn by Plaintiff, are dismissed without prejudice:

        a.      all First Amendment retaliation claims asserted by Plaintiff in this action, as against any defendant, under 42 U.S.C. § 1983;

        b.      all claims asserted by Plaintiff in this action as against defendant the City of New York;

        c.      all claims asserted by Plaintiff in this action, as against any defendant, under the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101, *et seq.*; and

        d.      all discrimination claims asserted by Plaintiff in this action, as against any defendant, under Title VII and/or the ADEA, except for Plaintiff's failure-to-promote claims against the DOE, arising out of the rejection of her January 2008 applications for assistant-principal positions at P.S. 210 and P.S.4.

2.      Defendant is granted summary judgment in its favor on Plaintiff's remaining Title VII and ADEA discrimination claims against the DOE, arising from the alleged failure to promote Plaintiff to the position of assistant principal at P.S. 210 and/or P.S. 4, and those claims are therefore dismissed with prejudice.

3.      Plaintiff is directed to show cause within thirty (30) days of the date of this Order why this Court should not dismiss, with prejudice, any Title VII or ADEA retaliation claims that Plaintiff may still be seeking to assert, with respect to the denials of her applications for positions at P.S. 210 and/or P.S. 4.  If Plaintiff wishes to withdraw her remaining Title VII and ADEA

25

retaliation claims voluntarily and without prejudice, then she should promptly notify the DOE and the Court of this, in writing.

The Clerk of the Court is directed to close Defendants' motion for summary judgment (Dkt. 11) on the Court's Docket.  In light of the within Order to Show Cause, however, the Court will defer decision as to the extent to which judgment should be entered in Defendants' favor, and as to whether the entire case should be closed.

Dated:  New York, New York
        September 28, 2012

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

26